IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1) SAFECO INSURANCE COMPANY OF AMERICA, <br>   Plaintiff, <br><br> v. <br><br> 1) O. GENE BICKNELL <br><br> Serve at: 792 N. Manasota Key Rd. <br> Englewood, FL 34223 <br><br> and <br><br> 2) LARRY K. WILHITE, <br><br> Serve at: 1194 Bird Rd. <br> Branson, Missouri 65616 <br><br>   Defendants. | Case No.: 26-cv-00015-CDL |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff Safeco Insurance Company of America ("Safeco"), by and through counsel, and pursuant to 28 U.S.C. §§ 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure, brings this action for declaratory judgment against Defendant O. Gene Bicknell ("Bicknell") and Defendant Larry K. Wilhite ("Wilhite") (collectively, "Defendants") for the purpose of determining a question of actual, immediate controversy between the Plaintiff and Defendants. In support of its request for such a declaratory judgment, Safeco states as follows:

**Nature of Action and Relief Sought**

1. This is an action for declaratory relief under 28 U.S.C. §§ 2201-2202 for the purpose of determining the Parties' rights and obligations, if any, under two insurance policies issued to Wilhite – a homeowners insurance policy, Safeco policy no. OZ4693676 (the "Homeowners Policy"), a copy of which policy is attached hereto as **Exhibit 1**; and an umbrella

1

insurance policy, Safeco policy no. UZ5085033 (the "Umbrella Policy"), a copy of which policy is attached hereto as **Exhibit 2** – with respect to a claim arising from an alleged campaign of deception and conspiracy regarding the American Heartland Theme Park Project between 2021 and 2024 (the "Theme Park Conspiracy").

2. Safeco, on the one hand, and Wilhite as well as Bicknell, on the other hand, have an actual and immediate controversy in that they dispute whether either the Homeowners Policy and/or the Umbrella Policy provides any insurance coverage for the present, actual and unresolved Theme Park Conspiracy claim against Wilhite by Bicknell.

3. Safeco seeks a judgment declaring that, under both policies, it does not have a duty to defend or to indemnify Wilhite for any claim asserted against him in connection with the Theme Park Conspiracy, including the claim asserted against him in the lawsuit *O. Gene Bicknell v. Richard M. Silanskas Jr., Larry K. Wilhite, and Stephen D. Hedrick,* Case No. 4:25-cv-00383-CDL (N. D. Okla.), which was filed on July 25, 2025 in the United States District Court for the Northern District of Oklahoma ("the Underlying Lawsuit") and is attached hereto as **Exhibit 3**.

4. All necessary and proper parties are before the Court with respect to the matters in controversy as set forth herein.

5. Safeco has no other adequate remedy at law.

### Parties, Jurisdiction & Venue

6. Safeco is an insurance company organized and existing under the laws of the state of New Hampshire with its principal place of business in Boston, Massachusetts, and is therefore a citizen of both New Hampshire and Massachusetts. Safeco is also authorized to conduct insurance business in Oklahoma.

7. Bicknell is a citizen of Florida, residing at 792 N. Manasota Key Rd., Englewood, Florida, 34223.

8. Wilhite is a citizen of Missouri, residing at 1194 Bird Road, Branson, Missouri, 65616.

9. The Court has personal jurisdiction over the Defendants because of their extensive contacts with and transactions in Oklahoma.

10. This Court has subject matter jurisdiction under 28 U.S.C. § 2201 and 28 U.S.C. § 1332(a) because: (1) Safeco is a citizen of New Hampshire and Massachusetts, Bicknell is a citizen of Florida, Wilhite is a citizen of Missouri, (2) this action is brought to determine Safeco's obligations, if any, under the Homeowners and Umbrella Policies, and (3) such obligations allegedly concern the following, with render the matter in controversy far in excess of $75,000.00:

   a. Homeowners Policy Section II Coverage E (personal liability), which, pursuant to its terms, provides such coverage up to $300,000 per occurrence, in addition to a legal defense; and

   b. Umbrella Policy for personal liability, which, pursuant to its terms, provides such coverage up to $300,000 per occurrence, in addition to a legal defense.

11. Venue of this action is proper in the United States District Court for the Northern District of Oklahoma under 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to this dispute occurred in this District.

**THE UNDERLYING LAWSUIT AND ITS ALLEGATIONS**

12. The Complaint in the Underlying Lawsuit alleges that Wilhite (and two others, together collectively the "Theme Park Conspirators") conspired to commit and did commit a multi-year fraudulent scheme to induce Bicknell to invest over $60 million in a proposed entertainment development known as the "American Heartland Theme Park," located in Vinita, Oklahoma.

13. The Complaint alleges the Theme Park Conspiracy began in late 2019, when Wilhite and his co-conspirator Silanskas met and began collaborating on entertainment ventures.

14. The Complaint alleges by early 2021, Wilhite introduced his co-conspirator Silanskas to Bicknell, and the concept of the American Heartland Theme Park began to take shape.

15. The Complaint alleges the Theme Park Conspirators misrepresented their professional backgrounds and qualifications, including impersonating Disney executive Ron Logan to gain Plaintiff's trust.

16. The Complaint alleges that beginning in 2022, the Theme Park Conspirators allegedly initiated a campaign of psychological and spiritual manipulation, sending Bicknell hundreds of messages purporting to be from "God" and religious figures.

17. The Complaint alleges these messages urged Bicknell to invest his personal fortune in the Theme Park Conspiracy, trust the Theme Park Conspirators completely, and eventually share ownership of the venture with them.

18. The Complaint alleges these communications were designed to exploit Bicknell's devout Christian faith and isolate him from his family.

19. The Complaint alleges between May 2022 and April 2024, Bicknell made numerous financial transfers totaling over $60 million, including:

- May–June 2022: Over $7 million spent acquiring land in Vinita, Oklahoma.
- July–December 2022: Approximately $10 million transferred to entities controlled by the Theme Park Conspirators.
- January–June 2023: Over $20 million in additional transfers, including payments to vendors and animation companies.
- July–December 2023: Another $18 million invested, including a $10 million infusion on July 27, 2023.

- January–April 2024: More than $4.8 million contributed, including a $2.2 million transfer on April 10, 2024.

20. The Complaint alleges despite these investments, Bicknell alleges that the Theme Park Conspirators constructed little more than a fence and gravel road.

21. The Complaint further alleges that the Theme Park Conspirators misappropriated funds for personal use, paid themselves and their family members substantial salaries and consulting fees, and fraudulently signed contracts on his behalf.

22. Bicknell filed suit against the Theme Park Conspirators on July 25, 2025. The Complaint, alleges the following eight causes of action:

   a. **Federal RICO Violation:** Bicknell alleges that the Theme Park Conspirators engaged in a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1962(c), 1964(c), including acts of wire fraud, impersonation, and misrepresentation, all in furtherance of a fraudulent scheme to obtain Bicknell's money and property.

   b. **RICO Conspiracy:** Bicknell alleges that the Theme Park Conspirators conspired to violate RICO by agreeing to participate in a racketeering enterprise and committing overt acts in furtherance of that conspiracy, in violation of 18 U.S.C. § 1962(d).

   c. **Civil Conspiracy:** Bicknell alleges the Theme Park Conspirators intentionally coordinated their actions to defraud him, forming an agreement to accomplish an unlawful objective through deceit and manipulation.

      d.      **Fraud**: Bicknell alleges that the Theme Park Conspirators made material misrepresentations that they knew to be false, with the intent that Bicknell rely on those misrepresentations, which he did to his detriment.

      e.      **Deceit (Oklahoma Law)**: Bicknell alleges that the Theme Park Conspirators willfully deceived him, in violation of Oklahoma Statutes Title 76, §§ 2–4, with the intent to induce him to alter his position, resulting in injury and financial loss.

      f.      **Constructive Fraud (Oklahoma Law)**: Bicknell alleges that the Theme Park Conspirators breached a duty arising from a relationship of trust by failing to disclose material facts and by misleading him, thereby gaining an unfair advantage and causing harm.

      g.      **Intentional Infliction of Emotional Distress**: Bicknell alleges that the Theme Park Conspirators engaged in extreme and outrageous conduct, including spiritual manipulation and impersonation of divine figures, which caused him severe emotional distress and physical harm, including a stroke.

      h.      **Unjust Enrichment**: Bicknell alleges that the Theme Park Conspirators received substantial financial benefits, including salaries, reimbursements, and payments to family members, without providing equivalent value, and that it would be unjust for them to retain those benefits.

23.    On August 8, 2025, Safeco was notified of Underlying Lawsuit via email from Ryan Insurance, Wilhite's insurance agent. In the same correspondence, Ryan Insurance requested that Safeco defend the Underlying Lawsuit under the Homeowners Policy and the Umbrella Policy.

24. On October 31, 2025 Safeco advised Wilhite that it would provide a defense in the Underlying Lawsuit, subject to a reservation of rights. Safeco expressly reserved all rights under the Homeowners Policy and the Umbrella Policy, including the right to initiate the present Declaratory Judgment Action.  *See* Safeco's Reservation of Rights Letter, attached hereto as **Exhibit 4**.

### The Homeowners Policy (#OZ4693676)

25. The Homeowners Policy was first issued by Safeco to Wilhite on March 14, 2017 and was in effect until it was cancelled by Wilhite effective March 18, 2023.[1]

26. The Homeowners Policy's Insuring Agreement provides:

> In reliance on the information you have given us, we will pay claims and provide coverage as described in this policy if you pay the premiums when due and comply with all the applicable provisions outlined in this policy
> The policy applies only to losses occurring during the policy period.

27. Section II – LIABILITY COVERAGES provides in part as follows:

**LIABILITY LOSSES WE COVER**

**COVERAGE E — PERSONAL LIABILITY**

If a claim is made or a suit is brought against any insured for damages because of ***bodily injury*** or ***property damage*** caused by an ***occurrence*** to which this coverage applies, we will:

1. pay up to our limit of liability for the damages for which the ***insured*** is legally liable; and

2. provide a defense at our expense by counsel of our choice even if the allegations are groundless, false or fraudulent. We may investigate and settle any claim or suit that we decide is appropriate. Our duty to settle or defend ends when the amount we pay for damages resulting from the ***occurrence*** equals our limit of liability.

---

[1] To the extent the allegations in the complaint pertain to conduct occurring in 2024, such allegations fall outside the applicable policy period, which ended in 2023. Accordingly, any losses arising from events in 2024 would not be covered under the policy, as coverage is limited to losses occurring during the policy period.

28. Section II – LIABILITY COVERAGES excludes in part the following:

**LIABILITY LOSSES WE DO NOT COVER**

1. **Coverage E — Personal Liability and Coverage F — Medical Payments to Others do not apply to *bodily injury* or *property damage*:**

a. which is expected or intended by any *insured* or which is the foreseeable result of an act or omission intended by any *insured*;

   This exclusion applies even if:

(1) such *bodily injury* or *property damage* is of a different kind or degree than expected or intended; or

(2) such *bodily injury* or *property damage* is sustained by a different person, or persons, than expected or intended.

   This exclusion does not apply to *bodily injury* resulting from the use of reasonable force by any *insured* to protect persons or property.

b. which results from violation of criminal law committed by, or with the knowledge or consent of any *insured*.

   This exclusion applies whether or not any *insured* is charged or convicted of a violation of criminal law, or local or municipal ordinance.

c. arising out of *business* pursuits of any insured.

   This exclusion does not apply to:

(1) activities which are ordinarily incident to non-*business* pursuits;

(2) the occasional or part-time *business* pursuits of any *insured* who is under 23 years of age;

(3) the rental or holding for rental of an *insured location*:

a. on an occasional basis for the exclusive use as a residence;

b. in part, unless intended for use as a residence by more than two roomers or boarders; or

c. in part, as an office, school, studio or private garage;

d. arising out of the rendering or failing to render professional services;

8

    e.  arising out of any premises owned or rented to any *insured* which is not an *insured location*;

***

  **2.**  **Coverage E — Personal Liability** does not apply to:

  a.  Liability:

***

      (2) under any contract or agreement.

***

      (3) liability arising our of any written or oral agreement for the sale or transfer of real property,

***

  **b.**  *property damage* to property owned by any *insured.*

29.    The Homeowners Policy contains the following conditions for SECTIONS I AND II – LIABILITY CONDITIONS:

  **1.**  **Policy Period and Changes.**

  a.  The effective time of this policy is 12:01 A.M. at the *residence premises*. This policy applies only to loss under Section I, or *bodily injury* or *property damage* under Section II, which occurs during the policy period.

30.    The Homeowners Policy contains the following definitions:

<strong><u>POLICY DEFINITIONS</u></strong>

  **1.**  Throughout this policy, "you" and "your" refer to:

  **a.**  the "named insured" shown in your Policy Declarations

***

  **1.**  "We", "us" and "our" refer to the underwriting company providing this insurance as shown in your Policy Declarations.

  **2.**  In addition, certain words and phrases are defined as follows:

***

9

    b.  ***"Bodily injury"*** means bodily harm, sickness or disease, including required care, loss of services and death resulting therefrom.

    c.  ***"Business"*** means a trade, profession or occupation engaged in on a full-time, part-time or occasional basis, or any other activity, including civic or public, engaged in for money or other compensation, except for the following:

(1) One or more activities, not described in (2) below, for which no ***insured*** receives more than $3,000 in total compensation for the 12 months before the beginning of the policy period; and

(2) volunteer activities for which no money or other compensation is received other than for expenses incurred to perform the activity.

*** 

    g.  ***"Insured"*** means:

(1) you;

*** 

    h.  ***"Insured location"*** means:

(1) the ***residence premises***;

*** 

    i.  ***"Occurrence"*** means an accident, including exposure to conditions which results in:

        (1) ***bodily injury***; or

        (2) ***property damage***;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one ***occurrence***.

*** 

    l.  ***"Property damage"*** means physical damage to or destruction of tangible property, including loss of use of this property.

10

## The Umbrella Policy (#UZ5085033)

31. The Umbrella Policy was first issued by Safeco to Wilhite on June 16, 2021 and was in effect until it was cancelled by Wilhite effective March 18, 2023.[2]

32. The Umbrella Policy's Insuring Agreement provides:

> We agree to provide the insurance described in this policy in return for the payment of all premiums and subject to the terms, conditions and limitations of this policy. The limit of our liability and the premiums are shown in the Declarations, which is a part of this policy.

33. The Umbrella Policy provides the following COVERAGES:

> **PERSONAL LIABILITY**
>
> We will pay the **ultimate net loss** in excess of the **retained limit** that the **insured** is legally responsible for because of covered **bodily injury**, **personal injury** or **property damage** caused by an **occurrence**.
>
> **DEFENSE COVERAGE**
>
> When a claim covered by this policy is made against any **insured,** and such claim is not covered by the **insured's underlying insurance** stated in the Declarations or by any other **underlying insurance** available to the **insured**, we will, subject to the **retained limits**, defend any suit against any **insured** even if it is groundless or fraudulent. And we will investigate, negotiate and settle on behalf of the **insured** any claim or suit as we deem appropriate.

34. The Umbrella Policy provides in part the following exclusions:

> **EXCLUSIONS**
>
> 2. **personal injury**:
>
> a. caused by or at the direction of an **insured** with the knowledge that the act would violate the rights of another and would inflict **personal injury;**
>
> b. arising our of oral or written publication of material, if done by or at the direction of an **insured** with knowledge of its falsity; or

---

[2] To the extent the allegations in the complaint pertain to conduct occurring in 2024, such allegations fall outside the applicable policy period, which ended in 2023. Accordingly, any losses arising from events in 2024 would not be covered under the policy, as coverage is limited to losses occurring during the policy period.

11

    c.  arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

  3.  **bodily injury** or **property damage** arising out of any act or damage which is expected or intended by an **insured** or which is the foreseeable result of any act or omission intended by any **insured**, which causes **bodily injury** or **property damage**.

    This exclusion applies even if:

  a.  such **bodily injury** or **property damage** is of a different kind or degree than expected or intended.

  b.  such **bodily injury** or **property damage** is sustained by a different person, persons or property than expected or intended.

***

5.  **bodily injury** or **property damage:**

b.  arising out of:

(1) any business pursuits or business property of the insured,

***

(2) the rendering of any professional service or the omission of such service by any insured.

***

e.  arising out of any liability assumed by any **insured** under any contract or agreement except any indemnity obligation assumed by the **insured** under a written contract directly relating to the ownership, maintenance or use of the **residence premises**.

f.  arising out of a written or oral agreement for the sale or transfer of real property,

***

i.  arising out of a criminal act or omission committed by or with the knowledge or consent of any insured, except those violations of a motor vehicle law.

***

11.  **punitive** or **exemplary damages** awarded against any insured.

35.    The Umbrella Policy contains the following definitions:

1.  Throughout this policy, "you" and "your" refer to:

    a. The "named insured" shown in the Policy Declarations;

***

2. "We," "us" and "our" refer to the underwing Company as shown in the Declarations providing this insurance.

    Other words and phrases are defined. They are in bold type when used:

3. "**Bodily injury**" means bodily harm, sickness or disease including resulting required care, loss of services and death.

4. "**Business**" means:

    a. a trade, profession or occupation engaged in on a full-time, part-time or occasional basis; or

    b. any other activity engaged in for money or other compensation other than reimbursement for expenses incurred to perform the activity.

***

8. "**Insured**"

    a. Means:

    (1) You;

***

9. "**Occurrence**" means:

    a. an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during coverage period, in:

    (1) **bodily injury**; or

    (2) **property damage**.

    b. an offense, committed during the coverage period, which results in personal injury.

10. "**Personal injury**" means injury arising out of one or more of the following offenses:

    b. false arrest, detention or imprisonment, or malicious prosecution;

    c. libel, slander or defamation of character; or

    d. invasion of privacy, wrongful eviction or wrongful entry.

***

13. "**Property damage**" means physical injury or destruction of tangible property including loss of use.

14. "**Punitive or exemplary damages**" include damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, and damages which are awarded for any purpose other than as compensatory damages for **bodily injury, personal injury** or **property damage.**

### Count I: Declaratory Judgment

36. Safeco re-alleges and incorporates all preceding paragraphs of this Complaint for Declaratory Judgment as if fully set forth herein.

37. The terms of the Homeowners Policy and the Umbrella Policy bar any coverage thereunder for the Theme Park Conspiracy, including the claims against Wilhite in the Underlying Lawsuit.

38. The Theme Park Conspiracy, including the claims alleged in the Underlying Complaint, does not involve bodily injury or property damage covered under the Policies.

39. The damages alleged for Theme Park Conspiracy, including the damages claimed in the Underlying Complaint, are not physical damage to tangible property. Loss of money is not damage to tangible property.

40. The Theme Park Conspiracy, including the claims alleged in the Underlying Complaint, does not involve an occurrence under the Policies. The Theme Park Conspiracy, including the claims alleged in the Underlying Compliant, does not involve an accident. The Underlying Complaint alleges the exact opposite of an accident; it alleges Wilhite's conduct was intentional and willful.

41. The Complaint specifically alleges Wilhite acted with the intent to deceive or defraud Bicknell. The Complaint alleges that Wilhite expected or intended the planned result and even conspired to defraud and steal. The Policies' expected or intended exclusion therefore excludes coverage because the at issue injury was both expected, intended and the foreseeable result of Wilhite's alleged conduct.

42. The Complaint specifically alleges Wilhite acted with the intent to deceive or defraud Bicknell  The Policies' intentional acts exclusion precludes coverage.

43. The Policies also exclude from coverage bodily injury or property damage (both of which are specifically denied) caused by a violation of criminal law. The exclusion applies whether or not the insured is charged or convicted of violating criminal law. Bicknell alleges Wilhite violated federal law by forming an unlawful enterprise (with another party to the Underlying Lawsuit) through a pattern of racketeering activity. Bicknell claims that the object of the unlawful enterprise was to defraud him out of his life savings and to psychologically manipulate him, through fraudulent communications, into investing money into the Theme Park Conspiracy. These claims – violation of RICO and conspiracy to violate RICO – involve conduct that may also constitute criminal acts.  Accordingly, the exclusion applies, and the Policies do not afford coverage for these claims.

44. Even if the Bicknell's claims met the definition of bodily injury or property damage (they do not), the claims are excluded under the business pursuits exclusion. This exclusion applies to activities that are part of the insured's trade, profession or occupation. The business pursuit exclusion broadly bars coverage for all business activities of the insured, whether employed by another or through the insured's own business. The conduct alleged in the Complaint—undertaken

in furtherance of the Theme Park Conspiracy—was clearly commercial in nature and undertaken as part of a business endeavor, not a personal pursuit. Therefore, the exclusion applies.

**DECLARATORY JUDGMENT RELIEF SOUGHT**

45.     Safeco seeks an interpretation of the Homeowners and Umbrella Policies and seeks a determination that it has no obligations with respect to the Theme Park Conspiracy or the Underlying Lawsuit.

46.     Safeco seeks a declaration from the Court that the Homeowners and Umbrella Policies afford no defense or indemnity for the Theme Park Conspiracy or the Underlying Lawsuit.

47.     Pursuant to Rule 57 of the Federal Rules of Civil Procedure, Safeco hereby requests "a speedy hearing of [this] declaratory-judgment action."

**WHEREFORE,** Plaintiff, Safeco Insurance Company of America respectfully prays for this Court to declare the rights of the parties under the Homeowners and Umbrella Policies, enter judgment for Safeco adjudging and declaring that it has no duty thereunder or otherwise to defend or to indemnify Wilhite with respect to the Theme Park Conspiracy or the Underlying Lawsuit, and grant such further and other relief as the Court deems just and proper.

Respectfully submitted,

_s/Tim D. Cain_
Tim D. Cain, OBA No. 11779
Wilson, Cain & Acquaviva
300 N.W. 13th Street, Suite 100
Oklahoma City, OK 73103
(405) 236-2600
(405) 236-2607 (Fax)
timcain@swbell.net

Sarah E. Lynn Baltzell (application for admission *pro hac vice* forthcoming)
Shook, Hardy & Bacon
2555 Grand Blvd.
Kansas City, MO 64108
(816) 559-2576
(816) 421-5547 (Fax)
slynn@shb.com

Attorneys for Plaintiff Safeco Insurance Company of America