# United States District Court
## for the Northern District of Oklahoma

Case No. 26-cv-15-JDR-CDL

SAFECO INSURANCE COMPANY OF AMERICA,

*Plaintiff*,

*versus*

O. GENE BICKNELL; LARRY WILHITE,

*Defendants*.

## OPINION AND ORDER

In a separate action before this Court, Defendant O. Gene Bicknell sued Richard Silanskas, Jr., Stephen D. Hedrick, and Defendant Larry K. Wilhite for their involvement between 2021 and 2024 in a purportedly fraudulent scheme designed to dupe Mr. Bicknell into investing millions of dollars in a doomed theme-park development project. Mr. Wilhite asked his insurer, Plaintiff Safeco Insurance Company of America, to provide a defense for that lawsuit. Safeco agreed, subject to a reservation of rights, and later brought this lawsuit seeking a judicial declaration regarding its obligations to defend and indemnify Mr. Wilhite. Safeco now moves for summary judgment in its favor, and only Mr. Wilhite opposes the motion. Dkts. 31, 32, 37, 38.[1] After reviewing Safeco's motion, the parties' briefs, and the corresponding evidence, the Court concludes that the underlying lawsuit does not involve a covered "occurrence" and that, as a result, Safeco has no duty to defend or

[1] All citations use CM/ECF pagination.

indemnify Mr. Wilhite. The Court grants Safeco's motion for summary judgment [Dkt. 31].

I

To prevail on its motion for summary judgment, Safeco bears the initial burden of demonstrating that there are no genuine issues of fact on any material matters in dispute, and that it is entitled to judgment as a matter of law. *See Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002), *as amended on denial of reh'g* (Jan. 23, 2003). If Safeco makes this showing, the opposing party, Mr. Wilhite, must respond by "set[ting] forth specific facts showing there is a genuine issue for trial." *Id.* The Court may only grant summary judgment if, when the facts and evidence are viewed in the light most favorable to Mr. Wilhite, "there is no genuine dispute as to any material fact and [Safeco] is entitled to judgment as a matter of law." *Vann v. Fewell*, No. 25-3076, 2026 WL 2033095, at *3 (10th Cir. July 14, 2026) (quoting Fed. R. Civ. P. 56(a)). The ultimate burden of establishing that summary judgment is appropriate remains, at all times, with Safeco. *Trainor*, 318 F.3d at 979.

II

The facts of this case are, in predominant part, undisputed. Safeco issued a homeowners insurance policy to Mr. Wilhite on March 18, 2020, and issued a personal umbrella policy to him on June 16, 2021. Dkt. 32 at 8, 10 (statements of fact nos. 1, 8). Both policies remained in effect from the time they were issued until March 18, 2023. *Id.* (statements of fact nos. 3, 10).

In July 2025, O. Gene Bicknell sued Mr. Wilhite and two other individuals for civil conspiracy, fraud, deceit, constructive fraud, intentional infliction of emotional distress, and unjust enrichment. Dkt. 32-1. These claims arise out of Mr. Wilhite's purported involvement in a scheme to defraud Mr. Bicknell out of millions of dollars. The lawsuit alleges that, between 2021 and 2024, Mr. Wilhite and his coconspirator, Richard Silanskas, Jr., engaged in a

"predatory conspiracy of psychological manipulation" designed to persuade Mr. Bicknell to invest in a proposed "American Heartland" theme park. Unbeknownst to Mr. Bicknell, Mr. Willhite and Mr. Silanskas purportedly planned to give themselves an ownership share in the park they built with Mr. Bicknell's money, "paying themselves handsomely along the way." *Id.* at 13-14 (statements of fact nos. 16, 19, 22, 23).

To perpetrate this scheme, Mr. Wilhite and Mr. Silanskas allegedly "embarked on a years-long campaign of psychological and spiritual abuse" during which they impersonated God and religious figures; persuaded Mr. Bicknell that God himself was commanding him to invest money in the theme park while trusting Mr. Wilhite and Mr. Silanskas with its management; and arranged for falsified emails and text messages to be sent to Mr. Bicknell to ensure continued investment in the project. *Id.* at 13-14 (statements of fact nos. 23-25). The complaint also alleges that Mr. Wilhite fraudulently signed Mr. Bicknell's name to vendor contracts without Mr. Bicknell's knowledge or authorization. *Id.* at 15 (statements of fact nos. 26, 27).

The complaint describes Mr. Wilhite's exploitation of Mr. Bicknell as intentional, persistent, calculated, and evil. *Id.* at 16, 18 (statements of fact nos. 30, 37). It pleads claims against Mr. Wilhite for civil conspiracy, fraud, deceit, constructive fraud, intentional infliction of emotional distress, and unjust enrichment, and it seeks relief in the form of damages, disgorgement of the funds wrongfully paid to Mr. Wilhite, injunctive relief, attorneys' fees, and costs. *Id.* at 17-18 (statements of fact nos. 31, 34, 36).[2]

Although Mr. Wilhite denies Mr. Bicknell's allegations in the underlying lawsuit, he agrees with Safeco's representations about those allegations. In other words, he agrees that the allegations are what Safeco says they are.

[2] The complaint also alleges that Mr. Bicknell "suffered a crippling stroke in July 2024." *Id.* at 16 (statement of fact no. 28).

Dkt. 38 at 8-10. Mr. Wilhite also agrees, for the most part,[3] with Safeco's representations regarding the policy provisions pertinent to this dispute. But Mr. Wilhite vehemently denies any knowledge about the creation of the fraudulent messages sent to Mr. Bicknell, any role in the creation of those emails, and any receipt of compensation for the work he performed in connection with the American Heartland project. Dkt. 38 at 13-14 (statements of fact nos. 14-16).

## III

The question presented by Safeco's motion is whether, under either of the two policies at issue, Safeco has a duty to defend or indemnify Mr. Wilhite in the underlying litigation. To answer that question, the Court must first determine whether Safeco's obligations under the insurance contracts are governed by Missouri or Oklahoma law. Only after answering that question can the Court determine the scope of the duties owed under the two insurance contracts.

The parties disagree over which state's law governs the interpretation of the insurance policies. Safeco argues that, under Oklahoma choice-of-law rules, the doctrine of lex loci contractus applies and the policies should be interpreted in accordance with the law of the state where the contracts were made—in this case, Missouri. Dkt. 32 at 18-19 (arguing that the insurance policies were issued to a Missouri resident, concern risks insured in Missouri, and were received by Mr. Wilhite in Missouri). Mr. Wilhite argues that there are exceptions to the doctrine of lex loci contractus and that two of those exceptions justify the application of Oklahoma law. Dkt. 38 at 16-19 (arguing Oklahoma law should apply based on the public-policy exception and the most-significant-relationship exception).

---

[3] Mr. Wilhite takes one exception to Safeco's statement of facts. He denies the accuracy of the "business pursuits" exclusion in the homeowner's policy and provides additional language regarding that exclusion. The dispute is not material to the Court's decision. Dkt. 38 at 8 (response to statement of fact no. 6).

Because this Court is exercising jurisdiction over the parties' dispute under 28 U.S.C. § 1332, it must apply the conflict-of-laws rules of Oklahoma, the state where this Court sits. *See Boyd Rosene & Assocs., Inc. v. Kansas Mun. Gas Agency*, 123 F.3d 1351, 1352 (10th Cir. 1997). And under Oklahoma conflict-of-law principles, the first question that this Court must ask in its choice-of-law analysis is "whether a conflict exists between the potentially applicable states' laws." *Saxon v. Safeco Ins. Co. of Am.*, No. CIV-24-00714-JD, 2026 WL 887822, at *2 (W.D. Okla. Mar. 30, 2026); *see Kentucky Bluegrass Contracting, LLC v. Cincinnati Ins. Co.*, 2015 OK CIV APP 100, ¶ 20, 363 P.3d 1270, 1274 (stating that, when the laws and interests of the concerned states do not conflict, there is no conflict to resolve, and no choice-of-law analysis is required).

After reviewing the governing law in both Oklahoma and Missouri, the Court concludes that an insurer's duty to defend may be somewhat broader under Oklahoma law than under Missouri law. Both Oklahoma and Missouri recognize that an insurer's duty to defend is more extensive than its duty to indemnify, and both states recognize that an insurer has a duty to defend if the pleadings in the underlying suit allege facts that give rise to a potentially covered claim. *See First Bank of Turley v. Fid. & Deposit Ins. Co. of Maryland*, 1996 OK 105, ¶ 13, 928 P.2d 298, 303; *Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 552 (Mo. 2014). Although both states recognize that an insurer's obligation to defend cannot be determined *solely* from allegations, Oklahoma determines whether an insurer owes a duty to defend at the time the insured demands a defense, whereas Missouri assesses an insurer's duty to defend somewhat earlier. *Compare First Bank of Turley*, 1996 OK 105 at ¶ 13, 928 P.2d at 303-04 (stating that an insurer's duty to defend is determined not only from the pleadings, but also "from other sources available to the insurer at the time the defense is demanded (or tendered)" (emphasis and footnote omitted)), *with Allen*, 436 S.W.3d at 552 (recognizing that an insurer's duty to defend extends to facts that were known or apparent "at the outset of the case"). Although this distinction may not make a difference in all cases, it may make

a difference in some. The difference constitutes a conflict, and a choice-of-law assessment is necessary.

Under Oklahoma conflict-of-law principles, "the nature, validity, and interpretation of a contract are governed by the law where the contract was made" unless the contract provides otherwise. *Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, ¶ 14, 164 P.3d 1028, 1034; *see* Okla. Stat. tit. 15, § 162 (providing that a contract must be interpreted "according to the law and usage of the place where it is to be performed, or, if it does not indicate a place of performance, according to the law and usage of the place where it was made"). Exceptions to this general rule have been recognized in "the unique context of motor vehicle insurance policies with contract terms contrary to law or the public policy of the state where enforcement is sought, and contracts involving the sale of goods under the Uniform Commercial Code." *Harvell*, 2006 OK 24, ¶ 14, 164 P.3d 1028, 1034. In those cases, courts will not apply the doctrine of lex loci contractus if the contract's "provisions are contrary to the public policy of Oklahoma, or . . . the facts demonstrate that another jurisdiction has the most significant relationship with the subject matter and the parties." *Bohannan v. Allstate Ins. Co.*, 1991 OK 64, ¶ 30, 820 P.2d 787, 797

Mr. Wilhite urges that the public-policy exception should apply, arguing that an insured who is sued in Oklahoma "should be entitled to its insurer being held to the broader duty to defend articulated under Oklahoma law." Dkt. 38 at 18. The Court is not persuaded. The public-policy exception appears to be limited to cases involving automobile coverage. *See Bohannan*, 1991 OK 64, ¶ 30, 820 P.2d at 797 (holding that an exception applies when the provisions of a *motor vehicle insurance* contract are contrary to Oklahoma

public policy).[4] Mr. Wilhite has not provided a basis for extending the public-policy exception outside of the automobile-insurance context, and the Court will not expand an exception that has been described as applying only in the "unique context of motor vehicle insurance policies" and UCC contract disputes without a basis for doing so. *Harvell*, 2006 OK 24, ¶ 14, 164 P.3d at 1034.

Furthermore, although Oklahoma and Missouri take different approaches when determining the duties owed by an insurer under an insurance contract, it does not follow that applying Missouri law would result in a violation of Oklahoma public policy. *See Roby v. Bailey*, 1993 OK CIV APP 93, ¶ 8, 856 P.2d 1013, 1015-16 (stating that a "violation of Oklahoma public policy is not equivalent to a conflict with Oklahoma law"). The public-policy exception to lex loci contractus "may be invoked only where the application of the other state's law violates a public policy *clearly expressed by the Legislature* and intended to be applicable to any insurance contract *effective in Oklahoma* or where application of the law of another state would effectively deprive the insured of benefits bargained for and received *under an existing Oklahoma insurance contract*." *Id.* (emphasis added). Mr. Wilhite has not pointed to a public policy expressed by Oklahoma's legislature that would be violated by the application of Missouri law, nor is this a case where applying Missouri law will affect the scope of the benefits afforded by an Oklahoma insurance contract. This case presents a simple conflict-of-law concern. It does not involve a scenario where applying Missouri law would constitute an affront to clearly

---

[4] *See also Harvell v. Goodyear Tire & Rubber Co.*, 2006 OK 24, ¶ 14, 164 P.3d 1028, 1034 (concluding that the public-policy exception applied to cases involving "motor vehicle insurance policies with contract terms contrary to law or . . . public policy" but not the case before it); *Burgess v. State Farm Mut. Auto. Ins. Co.*, 2003 OK CIV APP 85, ¶ 3, 77 P.3d 612, 613 (considering public-policy exception in the context of an automobile claim); *Roby v. Bailey*, 1993 OK CIV APP 93, ¶ 2, 856 P.2d 1013, 1015 (considering whether exception applied to a personal-injury and property-damage liability policy that covered the insured's automobiles).

expressed legislative policy. The public-policy exception therefore does not apply.

The Court rejects Mr. Wilhite's alternative argument that the most-significant-relationship exception applies in this case. The only connections between Oklahoma and this case are (1) the place of the injury allegedly caused by the insured and (2) the location of the ensuing lawsuit. These connections are not significant enough to justify departing from the general rule that a contract should be interpreted under the law of the state where it was made. *See Roby*, 1993 OK CIV APP 93, ¶ 7, 856 P.2d at 1015 (determining that the fact that the accident occurred in Oklahoma did not warrant application of the most-significant-relationship exception where contract was purchased and issued in Arkansas). Oklahoma courts have recognized that it is "the place of performance and the place of contracting," and not the place of injury, that "are to be accorded greatest significance" in the choice-of-law analysis. *Bernal v. Charter Cnty. Mut. Ins. Co.*, 2009 OK 28, ¶ 9, 209 P.3d 309, 314. The fact that the wrongful conduct was directed toward and had an impact in Oklahoma is "not sufficient to give Oklahoma the most significant relationship status to the subject matter and to the parties." *Id.* (declining to apply Oklahoma law despite the fact that the accident took place in Oklahoma and harmed an Oklahoma resident). No exception to the lex loci contractus rule applies in this case.

As both parties appear to agree, the contracts here were requested by, issued to, and provided to a Missouri resident. *See* Dkt. 32 at 8-11, 18-19; Dkt. 38 at 8, 16; Dkt. 41 at 7. The policies were therefore made in Missouri, and Missouri law governs this dispute. *See Nat'l Interstate Ins. Co. v. Phillips*, 123 F. App'x 339, 341 (10th Cir. 2005) (concluding the insurance contract was made in Oklahoma because Oklahoma was the state where the insureds lived, the place where they requested insurance and signed the contract, and the location where the policy and all premium notices were sent).

## IV

Safeco argues that, when the insurance contracts are properly construed under Missouri law, it does not have an obligation to defend or indemnify Mr. Wilhite in the underlying lawsuit for several reasons: First, it argues that the fraudulent scheme that Mr. Wilhite allegedly participated in cannot constitute an "occurrence" under either policy. Second, it argues that it only contracted to defend lawsuits for bodily injury, personal injury, or property damage, and the underlying lawsuit does not involve these categories of damages. Third, Safeco argues that the policies expressly exclude coverage for losses that were expected, intended, or the foreseeable result of any act or omission of Mr. Wilhite, and that the underlying lawsuit asserts claims that fall within this exclusion. Fourth, it argues that the criminal nature of Mr. Wilhite's conduct precludes coverage. And finally, it argues that the policies' business-pursuits exclusion applies. *See* Dkt. 32 at 19-29. The Court agrees with the first proposition raised by Safeco and, as a result, declines to address Safeco's remaining arguments.

Both of the policies require Safeco to defend and indemnify Mr. Willhite for claims or lawsuits for damages caused by a covered "occurrence." *See* Dkt 32-4 at 41; Dkt. 32-5 at 16. Although the policies provide separate definitions for the term "occurrence," the policies uniformly provide that an "occurrence" is an "accident" that results in bodily injury or property damage. *See* Dkt. 32-4 at 52; Dkt. 32-5 at 15.[5]

Safeco argues that there was no "accident" here. It contends that, under Missouri law, the term "accident" covers only unanticipated and

---

[5] The umbrella policy's definition of "occurrence" also encompasses "an offense . . . which results in personal injury." Dkt. 32-5 at 15 (emphasis omitted). The term "personal injury" means an injury arising out of (1) a false arrest, detention, or imprisonment or malicious prosecution, (2) libel, slander, or defamation, or (3) invasion of privacy, wrongful eviction, or wrongful entry. *Id.* Because the underlying lawsuit does not involve the intentional torts identified in the policy, the Court limits its analysis to whether Mr. Bicknell's claims against Mr. Wilhite involve an "accident."

unforeseeable events, not intentional and willful misconduct. According to Safeco, the allegations in the underlying lawsuit—which describe an ongoing, deliberate scheme to fraudulently deprive Mr. Bicknell of his fortune and his interest in a business venture—fall well outside the scope of what may be considered accidental conduct. *See* Dkt. 32 at 20-21.

Mr. Wilhite agrees that the underlying lawsuit involves intentional misconduct, but he urges the Court not to end its inquiry there. Instead, he asks the Court to look at the nature of Mr. Bicknell's claims and find that one of those claims—the claim for constructive fraud—could give rise to a duty to defend and indemnify. Mr. Wilhite argues that proof of intentional misconduct is not an essential element of the underlying constructive-fraud claim, and that Mr. Bicknell could prevail on that claim by presenting evidence of merely unintentional, negligent conduct. Dkt. 38 at 21. Essentially, he argues that, because a jury *could* find him liable for constructive fraud *without* finding that he had engaged in intentional misconduct, the lawsuit involves at least one potentially covered "occurrence," and Safeco must provide a defense to the entire suit. *Id.* at 21-22.

The Court agrees with Safeco that Mr. Bicknell's claims do not arise out of a covered occurrence because they do not involve an "accident." When the term "accident" is not defined in an insurance contract, Missouri courts construe that term to mean an "injury caused by the negligence of the insured." *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 49 (Mo. Ct. App. 1998) (citation and quotation marks omitted). The term does not extend to injuries intentionally inflicted because, under Missouri law, "[t]he concepts of negligence and intentional conduct 'are contradictory and mutually exclusive.'" *Brand v. Kansas City Gastroenterology & Hepatology, LLC*, 414 S.W.3d 546, 555 (Mo. Ct. App. 2013) (quoting *Gallatin v. W.E.B. Rests. Corp.*, 764 S.W.2d 104, 105 (Mo. Ct. App. 1988)).

When considering whether a claim arises out of an "accident," Missouri courts do not rely solely on the titles of the claims asserted. Instead, they look to the facts alleged and the facts known or reasonably apparent at the commencement of the lawsuit. The factual underpinnings of the claims against the insured, and not the titles of the claims themselves, inform whether an insurer has a duty to defend. *See Allen v. Cont'l W. Ins. Co.*, 436 S.W.3d 548, 552 (Mo. 2014) (holding that, to determine the scope of coverage, a court must compare the "policy language with the allegations" and that, if the pleading "alleges *facts* that give rise to a claim potentially covered by the policy, the insurer had a duty to defend" (emphasis added)).

For example, in *Wood v. Safeco Insurance Company of America*, the court of appeals recognized that a claim for negligent misrepresentation *could* arise out of a false statement negligently made, but it did not end its inquiry there. *Wood*, 980 S.W.2d at 53. Instead, the court went on to "consider whether the *allegations* [were] sufficient to find the negligent misrepresentation claims potentially covered by the policy." *Id.* (emphasis added). The court concluded that the allegations in that case—which did not permit the court to say that the insured's acts were even reckless, let alone intentional, *id.* at 54—could give rise to a duty to defend. *Id.* at 50-54 (concluding that the policy did not preclude defense coverage of a claim arising out of negligent misrepresentations regarding flooding and flooding risk where it was conceivable that the insured had never experienced any flooding); *see also Am. Fam. Mut. Ins. Co. v. Sharon*, 596 S.W.3d 135, 150 (Mo. Ct. App. 2020) (concluding that coverage was warranted where the allegations could support the conclusion that the misrepresentations were negligent).[6]

[6] *See also Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 393 (Mo. Ct. App. 2007) (noting that a negligent misrepresentation falls within the meaning of "accident" and concluding, based on the record before it, that the plaintiff "consistently asserted" that the insured made misrepresentations negligently and there was "no evidence" that the claimed damages were intended or expected).

By the same reasoning, Missouri courts have declined to extend defense coverage to claims premised upon intentional conduct, even when the claims sound in negligence. In *Brand v. Kansas City Gastroenterology & Hepatology, LLC*, the court of appeals was asked to determine whether an insurer was required to defend a claim of negligence per se. *Brand*, 414 S.W.3d a, 553. Notwithstanding the title of the claim, the trial court agreed with the insurer that the underlying lawsuit "did not arise out of any negligent act, error, or omission by the insured," but instead arose out of the insured's "intentional and deliberate" conduct. *Id.* at 551. The court of appeals agreed that the petition did not give rise to a duty to defend because the claims themselves were "premised upon intentional conduct" that was "knowingly undertaken with the intention of depriving [the plaintiff] of his legal rights" and causing him injury. *Id.* at 552, 553 (internal quotation marks omitted); *see also Safeco Ins. Co. of Am. v. Schweitzer*, 372 F. Supp. 3d 884, 890 (W.D. Mo. 2019) (concluding that "the fact that [the underlying] suit alleges a claim for negligence . . . does not alter the inherently intentional nature of [the] alleged misconduct").

Mr. Wilhite quotes Eighth Circuit authority for the proposition that the duty to defend should be "determined from the cause[s] of action pleaded[.]" Dkt. 38 at 21 (quoting *Interstate Bakeries Corp. v. OneBeacon Ins. Co.*, 686 F.3d 539, 542 (8th Cir. 2012)). But in making this argument, Mr. Wilhite divorces the Court's statement from its context. In *Interstate Bakeries*, the Eighth Circuit did not suggest that the duty to defend arises *solely* from the cause of action pleaded. Instead, it stated that the insured's duty is determined "from the cause of action pleaded, at the time the action is commenced, [and] not from what [a later] investigation or a trial of the case may show the true facts to be." *Id.* (quoting *Trainwreck W. Inc. v. Burlington Ins. Co.*, 235 S.W.3d 33, 39 (Mo. Ct. App. 2007)) (second alteration in original). In making this statement, the Court of Appeals merely confirmed that the duty to defend is determined from the information available when a claim is commenced, and not at a later point in the litigation. *Id.* The Court was not

suggesting that the duty to defend should be determined solely by the cause of action asserted.

The facts of *Interstate Bakeries* are telling. In that case, the insured was sued for trademark infringement, unfair competition, trademark dilution, and unfair/deceptive trade practices based on its use of marks similar to "Nature's Own." *Id.* at 541. It alleged that the insurer had a duty to defend under an insurance policy that covered losses arising out of "infringement of title or slogan." The Court of Appeals did not resolve the case by determining whether, categorically speaking, the claims asserted could be considered claims arising out of an "infringement of title or slogan." Instead, it concluded that the insurer had no duty to defend because the complaint "failed to allege facts that would indicate the trademarked phrase 'Nature's Own' is potentially a 'title' or 'slogan'" and there had been no showing of what the insurer could have learned about the mark from a reasonable initial investigation. *Id.* at 542. The Court concluded that the insurer owed no duty to defend because the factual allegations did not "give rise to a claim potentially within the policy's coverage" for title infringement. To hold otherwise, in the Court's opinion, "would require an unacceptable degree of imagination." *Id.* at 542, 545.

As the cases above demonstrate, the operative question when evaluating a duty to defend is not whether the claims asserted against the insured *could* be established by mere negligence; the question is whether the *facts alleged* in the underlying lawsuit (and the other information available to the insurer) demonstrate accidental, rather than intentional, conduct. *See Am. Fam. Mut. Ins. Co., S.I. v. Lakewood Chiropractic P. C.*, No. 4:19-cv-00927-HFS, 2021 WL 7081081, at *8 (W.D. Mo. Sept. 30, 2021) (concluding that no duty to defend arose where there were "no allegations that Lakewood's conduct or representations . . . were the result of negligence" (discussing *Sharon*, 596 S.W.3d at 144, and *Wood*, 980 S.W. 2d at 49)). The mere inclusion of a claim that *could* be satisfied by proof of negligence does not, by itself, "trigger a duty

to defend where the factual allegations forming the 'negligence' claim demonstrate intentional conduct." *Brand*, 414 S.W.3d at 553 (Mo. Ct. App. 2013).

In this case, the allegations against Mr. Wilhite do not give rise to a negligence claim. The complaint describes conduct undertaken knowingly and intentionally, not merely negligently. *See* Dkt. 32-1 at ¶¶ 46-52, 56, 79, 82-88, 105. There is no suggestion that Mr. Wilhite is being sued for negligence, nor is there an allegation that Mr. Wilhite should have known—but did not actually know—that the falsified text messages from God were actually from Mr. Silanskas and that he is being sued for negligently failing to inform Mr. Bicknell of the messages' origin. *Cf.* Dkt. 38 at 27 (arguing that a jury might find Mr. Wilhite liable based on unintentional conduct). Quite the contrary: Mr. Wilhite is alleged to have engaged in a campaign of abusive conduct during which he impersonated God and religious figures, causing Mr. Bicknell to believe God was commanding him to invest in a doomed theme-park project, all while paying himself with Mr. Bicknell's money. Dkt. 32-1 at ¶¶ 6-8. His conduct is described as manipulation, fraud, a con, and wrongdoing. *Id.* at ¶¶ 8-12, 47, 56, 63. There is nothing in the complaint (or any evidence of information available to Safeco at the time the underlying lawsuit was filed) suggesting that Mr. Wilhite's "conduct or representations . . . were the result of negligence." *Am. Fam. Mut. Ins. Co.*, 2021 WL 7081081, at *8.[7] Indeed, the word "negligence" does not appear in the pleading. Instead, the

[7] In his statement of undisputed facts, Mr. Wilhite states that he did not know of or participate in the fraudulent emails, that he believed those emails to be legitimate, and that he never received any compensation for the work he performed in connection with the American Heartland project. Dkt. 38 at 13-14 (statements of fact nos. 14-16). These facts, which are accepted as true, do not change the outcome because there is no evidence that Safeco was aware of these facts (or could have learned of them following a reasonable investigation) at the time the underlying lawsuit was filed. In any event, Mr. Wilhite has not pointed to Missouri case law suggesting that, when a plaintiff sues an insured for intentional misconduct, an insurer's duty to defend can be triggered by the insured's denial of intentional wrongdoing.

complaint asserts that Mr. Wilhite was a knowing participant in a scheme intentionally designed to manipulate Mr. Bicknell by "playing upon his religious faith." *Id.* at ¶ 47-52. This conduct cannot be characterized as "accidental" no matter what causes of action are asserted against Mr. Wilhite.

"Although Missouri law favors insured parties by determining an insurer's duty to defend based on whether certain facts 'give rise to a claim *potentially* within the policy's coverage,' use of the word "potentially" does not render boundless the duty to defend." *Post Holdings, Inc. v. Liberty Mut. Fire Ins. Co.*, 498 F. Supp. 3d 1098, 1104 (E.D. Mo. 2020) (quoting *Interstate Bakeries*, 686 F.3d at 544). By arguing that he is entitled to a defense because a jury *could potentially* enter a verdict based on negligence alone, Mr. Wilhite attempts to create a boundless duty out of a contractually limited one. The facts and allegations available at the time the underlying lawsuit commenced do not describe or support the existence of a mere accident. As a result, they do not describe or support a covered "occurrence," and they do not give rise to a claim potentially covered by the applicable policies.

Safeco raises a number of additional reasons why, in its opinion, it has no duty to defend or indemnify Mr. Wilhite, but the Court sees no reason to address those arguments here. The Court's determination that there was no covered occurrence effectively resolves the parties' dispute, and the interests of federalism and comity would be best served by refraining from ruling on matters of state law when it is not necessary to do so. The Court therefore declines to address Safeco's alternative arguments in support of its motion for summary judgment.

## V

The Court finds that the claims against Mr. Wilhite involve intentional wrongdoing, not negligent or accidental conduct. Under the two insurance policies at issue here, Safeco is only required to defend or indemnify Mr. Wilhite from claims arising out of accidental "occurrences." No accidental

occurrences are at issue in the underlying lawsuit, and Safeco has no duty to defend or indemnify Mr. Wilhite with respect to the claims and suit brought by Mr. Bicknell. Safeco's motion for summary judgment [Dkt. 31] is granted.

DATED this 25th day of November 2026.

JOHN D. RUSSELL
*United States District Judge*